**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**


UNITED STATES OF AMERICA :
         : CRIMINAL INDICTMENT
v.         :
         : NO. 1:16-cr-00218-LMM-RGV
GEOVON MARTIN, *et al.*,  :


## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

On June 21, 2016, a federal grand jury in the Northern District of Georgia returned an indictment against Otis Shannon ("Shannon") and several co-defendants, including Geovon Martin ("Martin") and Derrick McDow ("McDow"), charging Shannon, along with one or more of his co-defendants, in multiple counts with conspiracy to bribe a government official, in violation of 18 U.S.C. § 371, and conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.  [Doc. 1].[1] Defendants Martin and McDow have moved to sever the counts in which they are charged from the counts against their co-defendants, [Docs. 84 & 89], and Martin also has filed a motion to dismiss for improper joinder, [Doc. 80], a motion to dismiss Count Four, [Doc. 83], a motion for a bill of particulars, [Doc. 81], and a

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

motion for the names of unindicted co-conspirators, [Doc. 82]. The government has filed a consolidated response opposing these motions, [Doc. 95], and Martin and McDow have filed replies in support of their severance motions, [Docs. 105 & 110], and Martin also has filed replies in support of his motion to dismiss for improper joinder, [Doc. 104], and his motion for a bill of particulars, [Doc. 106]. For the reasons that follow, Martin's motion for a bill of particulars, [Doc. 81], is **DENIED**, his motion for the names of unindicted co-conspirators, [Doc. 82], is **DENIED** as moot, and it is **RECOMMENDED** that the defendants' severance motions, [Docs. 84 & 89], and Martin's motions to dismiss, [Docs. 80 & 83], be **DENIED**.

## I.  INTRODUCTION

According to the indictment, Shannon was employed by the Georgia Department of Behavioral Health and Developmental Disabilities ("DBHDD") and was responsible for reviewing provider applications submitted to DBHDD and verifying that the provider employed staff with requisite behavioral health experience, staffing levels, licenses and Medicaid eligibility. [Doc. 1 at 2 ¶ 5]. DBHDD "is the state agency that grants or denies approval to mental health and substance abuse treatment providers who intend to treat Medicaid members." [Id. at 1 ¶ 2]. "Once a provider successfully completes the DBHDD application process,

2

the Georgia Department of Community Health can issue a Medicaid provider number, which enables the provider to bill Medicaid for services." [Id.].

The indictment charges that Shannon's co-defendants, including Martin and McDow, either owned companies or were associated with companies that submitted applications to DBHDD seeking approval to bill Medicaid for mental health services, and that between August 2013 and January 2015, the co-defendants paid bribes to Shannon ranging from $1,000 to $10,000 in exchange for his assistance in his position at DBHDD with approving their applications for a Medicaid provider number, despite deficiencies and misrepresentations in their applications that rendered them non-compliant with DBHDD's requirements. [Id. at 3-31]. Specifically, count four of the indictment charges that Shannon and Martin conspired to commit health care fraud, in violation of 18 U.S.C. § 1349, in that Martin allegedly paid Shannon approximately $1,000 in exchange for falsifying documents included with Martin's application for a Medicaid provider number for New Progressions, LLC ("New Progressions"), and for shepherding the application through the DBHDD approval process despite the false statements and documents submitted in support of the application, which enabled Martin to obtain the Medicaid provider number for New Progressions based on the misrepresentations and to bill and receive over $2.8 million in Medicaid claims between September 2014 and June 2016. [Id. at 11-12 ¶¶

36-45].  Count five of the indictment charges that Martin conspired with Shannon to bribe a public official in the performance of his duties, in violation of 18 U.S.C. § 371, in that Martin allegedly paid Shannon at least $1,000 for his assistance with New Progression's application for a Medicaid provider number that was pending before DBHDD, and Shannon used his position at DBHDD to make false statements and draft a memorandum in support of approving New Progression's application. [Id. at 12-14 ¶¶ 46-48].

Similarly, count ten of the indictment charges that Shannon and McDow conspired to commit health care fraud, in violation of 18 U.S.C. § 1349, in that McDow allegedly paid Shannon approximately $1,500 in exchange for falsifying documents included with McDow's application for a Medicaid provider number for Outward Bound Community Services, LLC ("Outward Bound"), and for shepherding the application through the DBHDD approval process despite the false statements and documents submitted in support of the application, which enabled McDow to obtain the Medicaid provider number for Outward Bound based on the misrepresentations and to bill claims to Medicaid for reimbursement.  [Id. at 23-25 ¶¶ 81-91].  Count eleven of the indictment also charges that McDow conspired with Shannon to bribe a public official in the performance of his duties, in violation of 18 U.S.C. § 371, in that McDow allegedly paid or directed others to pay Shannon $1,500

4

for his assistance in, among other things, creating a false and fraudulent document in support of Outward Bound's application for a Medicaid provider number that was pending before DBHDD.  [Id. at 26-27 ¶¶ 92-94].

## II.  DISCUSSION

### A.   Motions to Sever & Dismiss for Improper Joinder, [Docs. 80, 84 & 89]

Martin moves to dismiss the counts against him for improper joinder, [Doc. 80], and both Martin and McDow move for a severance and separate trials from each other and their co-defendants, [Docs. 84 & 89].  Specifically, Martin contends that the charges in the indictment are improperly joined under Rule 8(b) of the Federal Rules of Criminal Procedure, [Doc. 80 at 7-8], and both defendants seek a severance under Rule 14, arguing, among other things, that undue prejudice will result if all of the defendants are tried together with their co-defendants, [Doc. 84 at 3-5; Doc. 89 at 4-5].

"When multiple defendants are indicted, joined offenses must be reviewed initially under the standard set forth under Fed.R.Crim.P. 8(b)."  United States v. Jones, No. CR 109-073, 2009 WL 2920894, at *1 (S.D. Ga. Sept. 11, 2009) (footnote and citation omitted).  "Once Rule 8(b) has been satisfied by the allegations in the indictment, severance is governed entirely by Fed.R.Crim.P. 14, which recognizes that even proper joinder under Rule 8(b) may prejudice a defendant or the

government." Id. at *2 (citing United States v. Lane, 474 U.S. 438, 447 (1986)); see also United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002). After consideration of the pleadings, the Court finds that joinder of the charges against Martin with the charges against the other defendants in the indictment was proper under Rule 8, and severance is not merited under Rule 14 for Martin or McDow on the present record.

### 1.    *Joinder is proper under Rule 8*

"Joinder of parties and defendants under Rule 8 is designed to promote judicial economy and efficiency." United States v. Weaver, 905 F.2d 1466, 1476 (11th Cir. 1990). "Rule 8 'is broadly construed in favor of the initial joinder.'" Id. (citation omitted); see also Zafiro v. United States, 506 U.S. 534, 537 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together."); Hersh, 297 F.3d at 1241; United States v. Touchet, No. 3:07-cr-90-J-33HTS, 2008 WL 2025322, at *7 (M.D. Fla. May 9, 2008); United States v. Cameron, No. 06-20753-CR, 2007 WL 1696022, at *3 (S.D. Fla. June 12, 2007), adopted at *1 (quoting United States v. Dominguez, 226 F.3d 1235, 1238 (11th Cir. 2000)). Indeed, Rule 8(b) "permits the joinder of [d]efendants in the same indictment if they are alleged to have participated in the same act or transaction, and the general rule is that [d]efendants indicted together should be tried together, especially in

conspiracy cases." United States v. Chavez, 584 F.3d 1354, 1359-60 (11th Cir. 2009) (citations and internal marks omitted).

Rule 8(b) provides that an "indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). It further provides that the "defendants may be charged in one or more counts together or separately," but that "[a]ll defendants need not be charged in each count." Id.; see also United States v. Parnell, No. 1:13–CR–12 (WLS), 2014 WL 1653397, at *1 (M.D. Ga. Apr. 24, 2014). "This language requires careful analysis of the relationship among the charged offenses, and it bars the imposition of a blanket rule that the indictment must contain either a conspiracy count or the allegation of a single unified scheme as to each type of offense charged." United States v. Cain, Criminal Action No. 3:14–cr–00022–TCB–RGV, 2015 WL 7117577, at *3 (N.D. Ga. Apr. 7, 2015), adopted by United States v. Melvin, 143 F. Supp. 3d 1354, 1383 (N.D. Ga. 2015) (quoting United States v. Grey Bear, 863 F.2d 572, 585 (8th Cir. 1988) (per curiam)).

"[I]n order to establish that the [co-defendants] have engaged in the 'same series of acts or transactions' under Rule 8(b) the government must demonstrate that the acts alleged are united by some substantial identity of facts and/or participants."

United States v. Morales, 868 F.2d 1562, 1569 (11th Cir. 1989) (footnote and citations omitted).  "Where the defendants' acts are part of a series of acts or transactions, it is not necessary that each defendant be charged in each count, nor to show that each defendant participated in every act or transaction in the series."  United States v. Gee, Criminal No. 3:07cr211, 2009 WL 412964, at *4 (W.D.N.C. Feb. 18, 2009) (citation and internal marks omitted).  "Although Rule 8(b) does not require that each defendant be charged with each act in the series, there must be a logical relationship between each of the defendants joined."  United States v. Souffrant, 517 F. App'x 803, 811 (11th Cir. 2013) (per curiam) (unpublished) (citation omitted).

Martin argues that the government violated Rule 8(b) because the indictment joins "together a group of business people whose individual alleged crimes have no connection with one another."  [Doc. 80 at 1].  He asserts that the indictment does not allege that the separate defendants all participated in the same act or transaction or the same series of acts or transactions, see [id. at 7-8]; however, the Court finds that the defendants and the charged offenses are properly joined because the charges involve the same series of acts or transactions pursuant to a common scheme of allegedly bribing Shannon for his assistance in his position at DBHDD in improperly obtaining a Medicaid provider number used to bill claims to Medicaid for reimbursement, see [Doc. 1].  Shannon is the common thread that connects the

charges together, and there is a substantial identity of facts and participants with respect to the bribery and health care fraud crimes charged in the indictment. See Cain, 2015 WL 7117577 at *6.

As the government points out in its response, the indictment charges that the defendants engaged in similar conduct as Shannon "assisted each codefendant in a similar way, during the same time period and for the common purpose of improperly receiving compensation for accepting forged and fraudulent applications for mental health services." [Doc. 95 at 7]. Although all of the defendants are not charged in each of the counts, "[w]here the defendants' acts are part of a series of acts or transactions, it is not necessary that each defendant be charged in each count, nor to show that each defendant participated in every act or transaction in the series." Gee, 2009 WL 412964, at *4 (citation and internal marks omitted). "In this context, [the court] [] appl[ies] a commonsense rule to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." United States v. Rittweger, 524 F.3d 171, 177 (2nd Cir. 2008) (citations and internal marks omitted). The substantial similarity of the conduct charged in the indictment involves significant factual overlap regarding DBHDD and its policies

and procedures, as well as Shannon's position at DBHDD and his role in the application process, and the similar steps he allegedly took to assist each co-defendant with obtaining a Medicaid provider number in return for accepting bribe payments.  Thus, the allegations of the indictment support joinder of the defendants and charges under Rule 8(b), and it is **RECOMMENDED** that Martin's motion to dismiss for improper joinder, [Doc. 80], be **DENIED**.

### 2.    *Severance is not warranted under Rule 14*

Although joinder is appropriate under Rule 8, the Court still has discretion under Rule 14(a) of the Federal Rules of Criminal Procedure to sever the offenses and order separate trials if it appears that consolidation of the charges would prejudice defendants. Fed. R. Crim. P. 14(a); United States v. Kopituk, 690 F.2d 1289, 1314-15 (11th Cir. 1982).  "In deciding a motion for severance, the Court must balance the right of a defendant to a fair trial against the public's interest in efficient and economic administration of justice."   United States v. Denmark, No. 205CR71FTM33DNF, 2005 WL 2755987, at *2 (M.D. Fla. Oct. 25, 2005) (citation and internal marks omitted).  "More specifically, the Eleventh Circuit has interpreted Rule 14 to require a [d]efendant seeking severance to demonstrate specific and compelling prejudice arising from a joint trial." Id. (citing United States v. Leavitt, 878 F.2d 1329, 1340 (11th Cir. 1989)).

Martin and McDow argue that severance is required for several reasons.  See [Doc. 84 at 3-5; Doc. 89 at 4-5].  First, Martin argues that inculpatory evidence may be admitted against some defendants that is inadmissible against him, and because a joint trial will necessarily include vast quantities of information that do not relate to him, "the cumulative and prejudicial 'spill over' effect may prevent the jury from sifting through the evidence so as to make an individualized determination as to each Defendant."  [Doc. 84 at 3-4 (citation omitted)].  Martin also argues that he would suffer undue prejudice in a joint trial with his co-defendants because the case involves a "series of stand-alone conspiracies involving distinct Defendants and entities," [id. at 4], and in a joint trial, Shannon will likely testify against each defendant, but his testimony against other defendants would be inadmissible in Martin's case if his charges were severed, [id. at 5].  McDow similarly argues that he would suffer "unfair prejudice" if he is tried with his co-defendants because there is no evidence that he or his company received any Medicaid reimbursements, whereas some of the co-defendants or their companies "received close to $2 million in Medicaid reimbursements allegedly through fraudulent means."  [Doc. 89 at 4].  Finally, McDow argues that it is possible that the government may offer statements and evidence from co-defendants that implicate him, and his Sixth Amendment

right to confrontation could be impacted contrary to <u>Bruton v. United States</u>, 391 U.S. 123 (1968).

While a defendant "can show compelling prejudice by demonstrating that the jury would not be able to separate the evidence relevant to each count, . . . instructions to the jury which require the jury to consider the evidence separately as to each defendant and count have been held to be adequate safeguards against prejudice due to joinder." <u>Denmark</u>, 2005 WL 2755987, at *2-3 (citation omitted) (citing <u>Kopituk</u>, 690 F.2d at 1320); <u>see also</u> <u>United States v. Baradji</u>, 479 F. App'x 301, 303 (11th Cir. 2012) (per curiam) (unpublished) (citation and internal marks omitted) ("[E]ven in the case of prejudicial spillover, a court's cautionary instructions will ordinarily mitigate the potential spillover effect of evidence of a codefendant's guilt."). Moreover, "severance is not required if some evidence is admissible against some defendants and not others and a defendant is not entitled to severance because the proof is greater against a co-defendant." <u>United States v. Jones</u>, No. 1:06-CR-140, 2007 WL 712420, at *4 (E.D. Tenn. Mar. 6, 2007) (citations and internal marks omitted); <u>see also</u> <u>United States v. Locascio</u>, 6 F.3d 924, 947 (2d Cir. 1993) (citations omitted) ("[J]oint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible.").

"It is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials," <u>Harrison v. United States</u>, 577 F. App'x 911, 914 (11th Cir. 2014) (per curiam) (unpublished) (citation and internal marks omitted), and this case "simply is not one where the risk that the jury will not, or cannot, follow instructions is so great that it outweighs the interest in judicial economy served by a joint trial," <u>United States v. Shoemaker</u>, Criminal No. 2:11–CR–00038–NBB–DAS, 2012 WL 256520, at *5 (N.D. Miss. Jan. 27, 2012).  The concerns cited by Martin and McDow can adequately be addressed through instructions to the jury at a joint trial and through the verdict form.[2]  Accordingly, the Court finds that Martin and McDow have failed to establish compelling prejudice such that the Court should exercise its discretion and sever their trials,[3] and it is **RECOMMENDED** that their motions for severance, [Docs. 84 & 89], be **DENIED**.

---

[2] McDow mentions a potential <u>Bruton</u> issue, but his motion appears to be premature as he has not identified any actual statement from a co-defendant that implicates him, and several co-defendants have already entered guilty pleas. Hence, McDow has not shown that there is any actual <u>Bruton</u> issue necessitating a severance at this time.

[3] Martin, McDow, and co-defendants Matthew Harrell and Marion Simpson are the only defendants awaiting trial as the remaining co-defendants have already entered guilty pleas.  <u>See</u> [Docs. 99, 102, 108, & 111].

**B.**   **Motion to Dismiss Count Four, [Doc. 83]**

Martin moves to dismiss count four of the indictment, arguing that it fails to allege an essential element of conspiracy to commit health care fraud under 18 U.S.C. § 1349 because it fails to allege any impact on interstate or foreign commerce. See [Doc. 83 at 1].  However, Martin concedes that his argument has been rejected by the Eleventh Circuit under similar circumstances in United States v. Reddy, 534 F. App'x 866 (11th Cir. 2013) (unpublished).  See [id. at 4].  The government responds that the allegations of the indictment relating to the health care fraud charge are legally sufficient as count four tracks the statutory language of 18 U.S.C. § 1349 and other allegations in the indictment incorporated by reference into that count support finding, as the Eleventh Circuit did in Reddy, that "the grand jury necessarily found that probable cause existed in a context where commerce was affected."  [Doc. 95 at 14-16 (internal marks omitted) (quoting Reddy, 534 F. App'x at 878)].

1.   *Standard on Motion to Dismiss*

"'In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment, and more specifically, the language used to charge the crimes.'"  United States v. Honeycutt, Criminal Action No. 2:12-CR-00022-RWS, 2014 WL 2003029, at *4 (N.D. Ga. May 14, 2014), adopted

14

at *1 (emphasis omitted) (quoting <u>United States v. Sharpe</u>, 438 F.3d 1257, 1263 (11th

Cir. 2006)); <u>see also</u> <u>United States v. Kopp</u>, Criminal Action No. 1:12–CR–0269–RWS,

2014 WL 2154199, at *4 (N.D. Ga. May 21, 2014), adopted at *1, <u>aff'd</u>, 778 F.3d 986

(11th Cir. 2015) (alteration in original) (citation and internal marks omitted) ("It is

well-settled that a court may not dismiss an indictment . . . on a determination of

facts that should have been developed at trial."). "'Generally, an indictment is

sufficient if it: 1) sets forth the elements of the offense in a manner which fairly

informs the defendant of the charge against which he must defend and 2) enables

him to enter a plea which will bar future prosecution for the same offense.'"[4] <u>United

States v. Germany</u>, 296 F. App'x 852, 862 (11th Cir. 2008) (unpublished) (internal

citation omitted) (quoting <u>United States v. Poirier</u>, 321 F.3d 1024, 1028 (11th Cir.

2003)). The Eleventh Circuit has held that "'when analyzing challenges to the

sufficiency of an indictment, courts give the indictment a common sense

construction, and its validity is to be determined by practical, not technical,

---

[4] "[I]f the indictment tracks the language of the statute, it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged." <u>United States v. Slawson</u>, Criminal Case No. 1:14-CR-00186-RWS-JFK, 2014 WL 5804191, at *5 (N.D. Ga. Nov. 7, 2014), adopted by 2014 WL 6990307, at *1 (N.D. Ga. Dec. 10, 2014) (citations and internal marks omitted). And, "[i]n judging the sufficiency of an indictment, courts are cautioned to use a broad and enlightened standpoint of common sense and right reason rather than [a] narrow standpoint of petty preciosity, pettifogging, technicality or hair splitting fault finding." <u>Id.</u> (second alteration in original) (citations and internal marks omitted).

considerations.'" Id. (internal citation omitted) (quoting Poirier, 321 F.3d at 1029). Furthermore, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998) (citation omitted). "Similarly, if the facts alleged in the indictment warrant an inference that the jury found probable cause to support all the necessary elements of the charge, the indictment is not fatally deficient on Fifth Amendment grounds." Id. (footnote and citation omitted).

### 2.   *Count Four adequately alleges the "affecting commerce" element*

Count four of the indictment charges Martin and Shannon with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.  [Doc. 1 at 10-12 ¶¶ 34-45]. Specifically, Martin and Shannon are charged with conspiring "to execute a scheme and artifice to defraud Georgia Medicaid, which is a health care benefit program as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by the omission of material facts, money and property owned by and under the custody and control of Georgia Medicaid, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347."  [Id. at 10 ¶ 35].  The object of the conspiracy was for the

defendants to obtain funds from Georgia Medicaid under false pretenses in that the defendants allegedly agreed that Shannon "would use his position within DBHDD to assist New Progressions[ ] in obtaining a Georgia Medicaid provider number, based upon false information and falsified documents; then New Progressions would submit claims to Georgia Medicaid for reimbursement."  [Id. at 11 ¶ 36]. Count four includes the manner and means that the defendants allegedly employed to effectuate the conspiracy, including that Martin paid Shannon approximately $1,000 in exchange for falsifying documents included with Martin's application for a Medicaid provider number for New Progressions and for shepherding the application through the DBHDD approval process, [id. at 12 ¶ 44], and from "on or about September 15, 2014, until in or about June 2016, New Progressions billed over $2.9 million in Medicaid claims and received over $2.8 million," [id. at 12 ¶ 45]. Count four also incorporates by reference the background allegations contained in paragraphs one through six of the indictment, including that Medicaid is a health insurance program jointly funded by the federal government and the states that pays medical bills for eligible low-income families.  [Id. at 10 ¶ 34].

Martin contends that count four fails to allege an essential element of conspiracy to commit health care fraud under 18 U.S.C. § 1349 because it does not allege any impact on interstate or foreign commerce. [Doc. 83 at 1].  Martin is correct

that "affecting commerce" is an essential element of health care fraud because the statutory definition of "health care benefit program" includes:

> [A]ny public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

18 U.S.C. § 24(b). However, as Martin acknowledges, [Doc. 83 at 4], the Eleventh Circuit has found that allegations similar to those used in count four are sufficient to satisfy the "affecting commerce" element of health care fraud, see Reddy, 534 F. App'x at 877-78. Specifically, in Reddy, the Eleventh Circuit ruled that, "although the 'affecting commerce' question was not presented in so many words," id. at 878, "the language and facts alleged within the Indictment as a whole support the inference that the grand jury understood that 'affecting commerce' was part of the § 1347 offense," id. at 877-78. The Eleventh Circuit explained that the indictment in Reddy provided the statutory reference to § 1347, tracked the statutory offense language, and detailed the workings of the alleged health care fraud, including how claims for reimbursement were submitted nationwide to Medicare and other health care benefit plans, resulting in "revenue upwards of five million dollars." Id. at 878.

Here, as in Reddy, the indictment cites the relevant statutes, §§ 1347 and 1349, [id. at 10 ¶ 35], tracks the statutory offense language, specifically alleging that the

defendants conspired to defraud Georgia Medicaid, which is a health care benefit program as defined in 18 U.S.C. § 24(b), [id.], including that Medicaid is a health insurance program jointly funded by the federal government and the states that pays medical bills for eligible low-income families, [id. at 1 ¶ 1, 10 ¶ 34], and details how the defendants allegedly conspired to carry out the offense that resulted in New Progressions billing over $2.9 million in Medicaid claims and receiving over $2.8 million, [id. at 12 ¶ 45]. These allegations support the conclusion that "the grand jury necessarily found that probable cause existed in a context where commerce was affected." Reddy, 534 F. App'x at 878. Accordingly, it is recommended that Matin's motion to dismiss count four, [Doc. 83], be **DENIED**.

## C.   Motion for Bill of Particulars, [Doc. 81]

Martin has filed a motion for a bill of particulars, [Doc. 81], in which he seeks an order requiring the government to specifically identify the date and amount of the alleged bribe payment he made to Shannon as charged in count five of the indictment, [id. at 4]. The specific allegation at issue is in sub-paragraph 48-d, which states that "[i]n or about 2014, Martin paid Shannon at least $1,000 for his assistance with New Progressions' [letter of intent] and application pending before DBHDD." [Doc. 1 at 14 ¶ 48 (all caps omitted)]. Martin asserts that "[n]either the indictment nor the discovery materials provide any further identification about the specific time

or amount of the so-called bribe payment to Shannon." [Doc. 81 at 3]. Martin maintains that he is "entitled to know exactly when and how much was paid to Shannon." [Id.]. The government opposes Martin's motion, arguing that he is not entitled to a bill of particulars because the indictment and discovery materials inform him of the charges in sufficient detail to mount a defense, and since he admitted during an interview with law enforcement to paying an individual later determined to be Shannon, Martin "knows or should [k]now the exact date and amount of money he paid . . . Shannon." [Doc. 95 at 19].

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court "may direct the government to file a bill of particulars." Fed. R. Crim. P. 7(f). "The purpose of a true bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'" United States v. Reddy, Criminal Action File No. 1:09-CR-0483-ODE/AJB, 2010 WL 3210842, at *5 (N.D. Ga. Apr. 5, 2010), adopted as modified by 2010 WL 3211029, at *1 (N.D. Ga. Aug. 11, 2010) (quoting United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)); see also United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981); United States v. Zellner, Criminal Indictment No. 1:09-CR-320-TCB-GGB, 2011 WL 530718, at *9 (N.D. Ga.

20

Jan. 14, 2011), adopted by <u>United States v. Chester</u>, Criminal Action File No.

1:09-cr-320-TCB-GGB, 2011 WL 529952, at *1 (N.D. Ga. Feb. 4, 2011).  Generalized

discovery is not a valid reason for seeking a bill of particulars, <u>Colson</u>, 662 F.2d at

1391; <u>United States v. Davis</u>, 582 F.2d 947, 951 (5th Cir. 1978),[5] and "[a] bill of

particulars may not be used for the purpose of obtaining detailed disclosure of the

government's case or evidence in advance of trial," <u>Zellner</u>, 2011 WL 530718, at *9

(citation omitted).  Further, a defendant is not entitled to a bill of particulars

describing information which is already evident from other sources, such as

elsewhere in the indictment or in discovery.  <u>United States v. Rosenthal</u>, 793 F.2d

1214, 1227 (11th Cir. 1986), <u>modified on other grounds by</u>, 801 F.2d 378 (11th Cir.

1986); <u>see also Reddy</u>, 2010 WL 3210842, at *5.

Count five of the indictment, about which the particulars are sought, charges

that Martin conspired with Shannon to bribe a public official in the performance of

his duties, in violation of 18 U.S.C. § 371, in that, in or about 2014, Martin allegedly

paid Shannon at least $1,000 for his assistance with New Progression's application

for a Medicaid provider number that was pending before DBHDD, and Shannon

used his position at DBHDD to make false statements and draft a memorandum in

---

[5] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit.  <u>Bonner v. City of Prichard, Ala.</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

support of approving New Progression's application.  [Doc. 1 at 12-14 ¶¶ 46-48].

"As applied to a charge of conspiracy, [] the view virtually universally held is that

the defendant is not entitled to particulars regarding the formation of the

conspiracy; [the] exact time and place of overt acts and the names and addresses of

persons present; the details concerning how and when the conspiracy was formed

or when each participant entered the conspiracy."  United States v. Upton, 856 F.

Supp. 727, 753 (E.D.N.Y. 1994) (citations omitted).  Moreover, "[t]he purpose [of a

bill of particulars] is not to provide detailed disclosure before trial of the

Government's evidence."  United States v. Sherriff, 546 F.2d 604, 606 (5th Cir. 1977)

(citations omitted); see also United States v. Esteves, 886 F. Supp. 645, 646 (N.D. Ill.

1995) (evidentiary detail sought by defendant beyond proper scope of bill of

particulars); United States v. Henry, 861 F. Supp. 1190, 1197 (S.D.N.Y. 1994) (requests

to know the "whens," "wheres," and "with whoms" of acts in conspiracy are

routinely denied); United States v. Lobue, 751 F. Supp. 748, 756 (N.D. Ill. 1990)

("Requests for a list of witnesses or other evidentiary details as to when and where

conversations took place are not within the scope of a bill of particulars.").

The indictment specifies the approximate date and amount of the alleged

bribe payment, [Doc. 1 at 12-14 ¶¶ 46-48], but not as precisely as Martin desires, and

the government responds that it has provided more details in discovery, including

a statement Martin made during an interview with law enforcement agents in which he admitted paying an individual named "Mike," who was later determined to be Shannon. [Doc. 95 at 19]. Martin replies that the report cited by the government details that he admitted making payments to several consultants, and a bill of particulars is needed so that he "will know for certain which payments are alleged to be illegal bribes, as opposed to regular payments to consultants." [Doc. 106 at 2]. However, Shannon is the only individual who allegedly received a bribe payment from Martin, and when particulars are sought with respect to "events in which one or more of the defendants participated, or which occurred in one or more of the defendants' presence[,] [t]he Eleventh Circuit has held that this sort of information need not be furnished in a bill of particulars." United States v. Williams, 113 F.R.D. 177, 179 (M.D. Fla. 1986) (footnote and citations omitted); see also United States v. Griesbeck, No. 10-20108-BC, 2011 WL 528579, at *4 (E.D. Mich. Feb. 8, 2011) (internal marks omitted) (finding defendant was not entitled to information regarding the "precise nature, character and circumstances of any words uttered or acts engaged in" by him). Martin has not cited any authority to support his request for the more precise information he seeks, see [Docs. 81 & 106], and for the foregoing reasons, his motion for a bill of particulars, [Doc. 81], is **DENIED**.

**D.**     <u>**Motion for Names of Unindicted Co-conspirators, [Doc. 82]**</u>

Finally, Martin moves for the names of all alleged unindicted co-conspirators whose identities are known to the government.  <u>See</u> [Doc. 82].  The government responds that Martin's motion should be denied as moot because it "will provide such information by letter to defense counsel."  [Doc. 95 at 21].  Based on the government's representation that it will provide the information requested by Martin, his motion for the names of unindicted co-conspirators, [Doc. 82], is **DENIED** as moot.

### III.  CONCLUSION

For the foregoing reasons and cited authority, Martin's motion for a bill of particulars, [Doc. 81], is **DENIED**, and his motion for the names of unindicted co-conspirators, [Doc. 82], is **DENIED** as moot, and it is **RECOMMENDED** that the motions to sever, [Docs. 84 & 89], the motion to dismiss for improper joinder, [Doc. 80], and the motion to dismiss count four, [Doc. 83], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial as to all defendants.

**IT IS SO ORDERED** and **RECOMMENDED**, this 16th day of November, 2016.

*Russell G. Vineyard*

RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE