# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| OTIS SHANNON, | :: | MOTION TO VACATE |
|     Movant, | :: | 28 U.S.C. § 2255 |
| | :: | |
| v. | :: | CRIMINAL NO. |
| | :: | 1:16-CR-0218-LMM-RGV-1 |
| UNITED STATES OF AMERICA, | :: | |
|     Respondent. | :: | CIVIL ACTION NO. |
| | :: | 1:18-CV-0549-LMM-RGV |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Otis Shannon's pro se motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [Doc. 181], the government's response, [Doc. 187], and Shannon's reply, [Doc. 188]. For the reasons that follow, it is **RECOMMENDED** that Shannon's § 2255 motion be denied.

## I. PROCEDURAL HISTORY

A federal grand jury in the Northern District of Georgia returned a thirteen count indictment against Shannon and seven co-defendants, charging Shannon in Counts One, Three, Four, and Six with conspiring to commit healthcare fraud, in violation of 18 U.S.C. §§ 1347 and 1349; and in Counts Two, Five, and Seven with conspiracy to commit bribery, in violation of 18 U.S.C. § 371. [Doc. 1]. Represented

by retained counsel Michael Katz ("Katz") and Thomas Mondelli, Shannon entered a negotiated guilty plea to Counts One and Two. [Docs. 99; 186]. The government agreed to dismiss the remaining counts. [Doc. 99-1 at 5].

The plea agreement included a limited waiver of appeal, which provides that Shannon

> voluntarily and expressly waives the right to appeal his conviction and sentence and the right to collaterally attack his conviction and sentence in any post-conviction proceeding (including, but not limited to, motions filed pursuant to 28 U.S.C. § 2255) on any ground, except that [Shannon] may file a direct appeal of an upward departure or upward variance above the sentencing guideline range as calculated by the district court. Claims that [Shannon's] counsel rendered constitutionally ineffective assistance are excepted from this waiver.

[Id. at 17]. This provision of the plea agreement further provides that Shannon may file a cross appeal if the government appeals the sentence. [Id.]. Shannon signed the plea agreement and a separate certification section, which states in relevant part:

> I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. I also have discussed with my attorney the rights I may have to appeal or challenge my conviction and sentence, and I understand that the appeal waiver contained in the Plea Agreement will prevent me, with the narrow exceptions stated, from appealing my conviction and sentence or challenging my conviction and sentence in any post-conviction proceeding. No one has threatened or forced me to plead guilty, and no

promises or inducements have been made to me other than those discussed in the Plea Agreement.

[Id. at 18-19].

At the plea hearing, Shannon was placed under oath and confirmed that he had signed the plea agreement. [Doc. 186 at 2-3]. When the Court inquired whether Shannon had ever been treated or hospitalized for any mental illness or condition, Shannon responded that he had "at times suffered from depression," had been diagnosed with bipolar disorder "about ten years ago," and had "not had any active treatment or episodes that would warrant seeking any since then." [Id. at 5]. Shannon then confirmed that his prior issues were "not causing [him] any problem . . . such that [he was] having any difficulties understanding the proceedings or the consequences of [his] decision to plead guilty." [Id. at 6]. Katz told the Court that he did not have any doubts as to Shannon's competency to enter a guilty plea. [Id.].

The Court explained to Shannon the rights he was giving up by pleading guilty, and Shannon stated that he understood. [Id. at 6-9]. Shannon also confirmed that he understood the nature of the charges against him. [Id. at 13]. The government then summarized what the evidence would show if the case went to trial as follows:

> . . . Shannon . . . was an employee of the Georgia Department of Behavioral Health and Developmental Disabilities, also know as

> D.B.H.D.D.[, which] is a state agency that grants or denies approval for those that wish to provide mental health and substance abuse treatment and charge Medicaid in the state of Georgia. As a part of his role with that agency, Mr. Shannon received applications submitted by private providers to become Medicaid eligible, and he had the job of making sure they met the requirements that the agency had in order to . . . move on to the next step.
>
> The government would present evidence that while he was employed with D.B.H.D.D., one, the agency received in excess of $10,000 during the period of January 1, 2013 through December 31, 2015 from the federal government related to Medicaid payments. . . . [Shannon] took bribe payments from multiple providers as alleged in the indictment to, one, accept applications that did not meet the program requirements; two, to falsify documents that were lacking in some of these applications; and, three, to falsify and fraudulently prepare certain licensing that the agency required before they could be accepted as a Medicaid provider in the state. The government alleged that [Shannon] both solicited bribes from people and accepted bribes from individuals that were providers seeking to get approval from D.B.H.D.D.
>
> The government would also provide evidence of individuals who had never worked for these providers but whose resumés and signed forms were incorporated within applications . . . without their knowledge by Mr. Shannon. . . . Many of these applications . . . did not actually make it all the way through, but a number of them did. . . . [A]bout $5.9 million was billed by some of these agencies in which Mr. Shannon had the - - at the very beginning level of allowing the application to go through when it did not meet the program requirements at the time and should have been denied. And he receives cash payments and checks for him to push those applications through . . .

[Id. at 13-15]. Shannon affirmed that he did not disagree with any of the facts stated by the government. [Id. at 15].

4

The government explained that Shannon faced a possible maximum sentence of ten years of imprisonment on Count One and five years on Count Two. [Id. at 16]. The Court advised Shannon that it could impose the maximum sentence and that Shannon could not withdraw his plea if he received a higher sentence than he expected, and Shannon confirmed that he understood. [Id. at 17]. The Court further explained that it would consider the United States Sentencing Guidelines in determining a reasonable sentence but could impose a sentence above or below the guideline range, and Shannon affirmed that he understood. [Id. at 18-19]. The Court also reviewed the terms of the appeal waiver, and Shanon agreed that he understood the effect of the appeal waiver. [Id. at 30-31]. Shannon acknowledged that no one had promised him anything not contained in the plea agreement, that no one had threatened, pressured, forced, or intimidated him to plead guilty, that no one had promised him a particular sentence, and that he was satisfied with his lawyers' services. [Id. at 31]. The Court accepted Shannon's plea, stating:

> I have observed you here today, and on the basis of the answers you've provided to my questions, as well as the record in the case, I do find that your guilty plea is knowingly, voluntarily, and intelligently made on the advice of competent counsel . . .

[Id. at 33].

At sentencing, the Court determined that Shannon's guideline range was thirty-seven to forty-six months of imprisonment. [Doc. 185 at 37]. The Court then imposed a total sentence of thirty months of imprisonment. [Id. at 47; Doc. 174]. Shannon did not file a direct appeal.

Shannon timely filed this pro se § 2255 motion, raising the following grounds for relief: (1) he received ineffective assistance of counsel because Robert Giannini ("Giannini"), the attorney who represented him during his proffer sessions with the government before he was indicted, "was not properly licenced to practice law at the federal level"; (2) his subsequent counsel was ineffective for failing to "present [his] mental health issues and request [a competency hearing and] an independent evaluation to determine whether . . . [his] mental state influenced [his] participation in the criminal activity" or impaired his ability to understand the charges and plea agreement, even though he made numerous requests that counsel inform the Court that he "was under treatment for Major Depression/Bi-Polar Disorder Features Diagnosis" from his arrest through sentencing; (3) there was no conspiracy because some of the co-conspirators were dismissed from the indictment; (4) counsel failed to argue that the Court erred in determining the amount of loss attributable to him; (5) counsel was also ineffective for failing "to pursue [a] defense of lack of intent and withdrawal from

6

the conspiracy"; (6) counsel further failed to argue that the Drug Abuse Treatment Licence ("DTAP") was not required to obtain a Medicaid Provider License; and (7) counsel provided him ineffective assistance at sentencing by failing to challenge his sentencing enhancements for (a) leadership role and (b) unauthorized use of identification. [Doc. 181 at 4-5, 7-8, 18-37]. The government responds that ground (2) is not supported by the record and that Shannon's remaining grounds are barred by his valid appeal waiver[1] and further lack merit. [Doc. 187 at 10-21]. Shannon replies, arguing the merits of grounds (1), (2), and (7)(b). [Doc. 188].

## II.  DISCUSSION

### A.  Legal Standards

A federal prisoner may file a motion to vacate his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "[T]o obtain collateral relief a prisoner must

---

[1] Because the appeal waiver provision of Shannon's plea agreement exempts claims that his "counsel rendered constitutionally ineffective assistance," [Doc. 99-1 at 17], the Court will address the merits of each of Shannon's claims as he has argued in his supporting brief that his counsel was ineffective with respect to each issue raised, see [Doc. 181].

7

clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982) (footnote omitted). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. See Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

The standard for evaluating ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The analysis is two-pronged. However, a court need not address both prongs "if the defendant makes an insufficient showing on one." Id. at 697. A defendant asserting a claim of ineffective assistance of counsel must first show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id. at 690. Second, a defendant must demonstrate that counsel's unreasonable acts or omissions prejudiced him. In order to demonstrate prejudice, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57, 59 (1985) (citations omitted). Additionally,

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

### B.  Ground (1): Gianninni's Alleged Lack of Experience in Federal Court

Shannon first argues that he received ineffective assistance of counsel because Giannini, the attorney who represented him during his proffer sessions with the government before he was indicted, "was not properly licenced to practice law at the federal level." [Doc. 181 at 4, 18]. Shannon maintains that Giannini misrepresented

9

his experience with federal cases and "failed to adequately investigate, develop, or present mitigating evidence" during proffer sessions with the government. [Id. at 18, 23]. The government responds that Shannon fails to show that these alleged deficiencies prejudiced him. [Doc. 187 at 17]. Shannon replies that Giannini lacked the experience necessary to adequately advise Shannon of his rights and that the proffer "meetings prejudiced his position with the government and led to a more deleterious plea agreement." [Doc. 188 at 12].

Shannon concedes that he elected to plead guilty on the advice of new counsel and does not assert that this decision was in any way based on Giannani's advice. [Doc. 181 at 19]. Shannon does not specify what "mitigating evidence" Giannini should have presented and also has not alleged any facts to support his contention that the proffer sessions somehow led to a less advantageous plea agreement. "Conclusory allegations of ineffective assistance are insufficient." Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992) (citation omitted). Accordingly, Shannon has not shown prejudice based on Giannini's representation during the proffer sessions and, thus, is not entitled to relief on this ground.

**C.     Ground (2): Counsel's Failure to Present Shannon's Mental Health Issues**

In ground two, Shannon alleges that the attorneys he hired after he fired Giannani were ineffective for failing to "present [his] mental health issues and request [a competency hearing and] an independent evaluation to determine whether . . . [his] mental state influenced [his] participation in the criminal activity" or impaired his ability to understand the charges and plea agreement, even though he made numerous requests that counsel inform the Court that he "was under treatment for Major Depression/Bi-Polar Disorder Features Diagnosis" from his arrest through sentencing. [Doc. 181 at 5, 22-26, 31-32, 34-35]. The government responds that this ground is not supported by the record and that Shannon has not shown prejudice. [Doc. 187 at 10-13]. Shannon replies, in pertinent part, that both defense counsel and the government knew about Shannon's mental health issues before entering into the plea agreement and that Shannon's signature on the plea agreement and remarks during the plea colloquy are insufficient "evidence of his mental stability," as "a mental health profession is the only person capable of rendering a determination on the defendant's mental stability or lack thereof." [Doc. 188 at 1-9].

In support of his claim that he was mentally incompetent, Shannon relies on a December 9, 2014, letter from Dr. Torri Griffin, whom Shannon "approached . . . in

11

search of documentation that supports his stability in the workplace . . ." [Doc. 181-2 at 3]. Dr. Griffin noted that Shannon had a history of "mild depressive episodes, which he has managed in various ways over the years," and found that Shannon "will most likely handle himself and those around him in a similar fashion and not become a threat to his immediate workplace nor society in general," but recommended "a course of treatment that allows [Shannon] to explore and address his sorted history of inconsistent behavior when involved with others and his lack of good judgment at times of disagreement over specific issues." [Id.]. This letter does not show that Shannon suffered from major depression or bipolar disorder at the time the crimes charged in this case were committed or during his proffer sessions, plea proceedings, or sentencing hearing. It also does not support Shannon's claim that he was mentally incompetent and did not understand the charges against him.

Shannon's sworn statements during the plea colloquy show that his prior issues with depression and mental illness did not affect his ability to understand the nature of the charges against him or his decision to plead guilty. Shannon unequivocally testified that he had not had any mental episodes that would warrant treatment since his diagnosis ten years before and that he had no trouble understanding the proceedings or the nature of the charges against him. [Doc. 186 at 5-6, 13].

12

Furthermore, Shannon's attorney told the Court that he did not have any doubts as to Shannon's competency to enter a guilty plea. [Id. at 6]. Shannon also acknowledged that he was satisfied with his lawyers' services. [Id. at 31].

The Court accepted Shannon's plea and found, based on its observation of Shannon and his responses during the plea colloquy, that his plea was "knowingly, voluntarily, and intelligently made." [Id. at 33]. Shannon's assertion that his remarks during the plea colloquy cannot support a finding that he was competent to enter a plea is incorrect. See United States v. Johns, 390 F. App'x 963, 965, 971 (11th Cir. 2010) (per curiam) (affirming district court's finding, based on the plea colloquy, that defendant was competent to enter plea and understood the nature of the charges against him). Shannon has not met his "heavy burden" to show that the statements he made during his plea colloquy were false. See Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam) (holding that self-serving allegations in § 2255 motion were insufficient to rebut the presumption that statements made during plea colloquy were true and correct); Wilcox v. United States, No. 8:10-CV-1917-T-27EAJ, 2011 WL 5975683, at *10 (M.D. Fla. Nov. 29, 2011) ("In sum, Petitioner presents no credible evidence, other than his own self serving, after-the-fact contentions, that he was not competent to enter a knowing and voluntary guilty plea,

13

that his attorney was in the slightest degree remiss in his advice and representation concerning the plea, or that he would not have pleaded guilty and insisted on a trial but for counsel's alleged deficient performance.").

Additionally, counsel did inform the Court during sentencing of Shannon's history of family dysfunction, sexual assault, and diagnosis of "bipolar anxiety and major depression." [Doc. 185 at 40]. Counsel clarified that he was not "saying at any time that [Shannon] doesn't understand what's going on today and that he fully understands and appreciates the serious nature of everything." [Id.].

In sum, Shannon fails to show deficient performance by counsel, and although he has the burden of affirmatively proving prejudice, Gilreath v. Head, 234 F.3d 547, 551 (11th Cir. 2000), he does not allege in his § 2255 motion that, but for counsel's errors, he would have insisted on going to trial. However, in his reply to the government's response, he asserts for the first time that had he received mental health treatment "he would have understood the charges against him and elected to proceed to trial." [Doc. 188 at 7]. Arguments raised for the first time in a reply brief are not properly before the Court. Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) (per curiam) (citations omitted). In any event, this after the fact statement is insufficient to show prejudice, particularly given that the record belies Shannon's

14

claim that he did not understand the proceedings. Accordingly, Shannon is not entitled to relief on ground (2).

### D. Grounds (3), (5), and (6): Counsel's Failure to Pursue Various Defenses

Next, Shannon maintains that counsel should have (1) argued that there was no conspiracy because some of the co-conspirators were dismissed from the indictment, (2) pursued a "defense of lack of intent and withdrawal from the conspiracy," and (3) argued that the DTAP was not required to obtain a Medicaid Provider License. [Doc. 181 at 7, 19-22, 26-29, 36-37]. The government responds that these claims lack merit. [Doc. 187 at 17-19]. Shannon's reply does not address these grounds. See generally [Doc. 188].

First, not all of Shannon's co-defendants were dismissed; Denise Dixon, Sharon Zellner, and Cortim Martin all pleaded guilty. [Docs. 147; 170; 172]. In any event, a person may be convicted of conspiracy "even when co-defendants are known and not prosecuted." United States v. Lance, 536 F.2d 1065, 1068 (5th Cir. 1976).[2] Second, other than Shannon's own self-serving allegations in his § 2255 motion, he has not presented any evidence to show that he lacked intent to commit the crimes

---

[2]Decisions of the former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

15

charged or that he withdrew from the conspiracy. As previously discussed, Shannon knowingly and voluntarily pled guilty. Third, Shannon has presented no evidence to show that DTAP licenses were not needed, and he agreed with the government's statement that he falsified and fraudulently prepared licensing documents that the state government agency required for Medicaid providers. [Doc. 186 at 13-15]. Furthermore, Shannon's plea of guilty is an "admission that he committed the crime[s] charged against him," North Carolina v. Alford, 400 U.S. 25, 32 (1970), and "comprehend[s] all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence," United States v. Broce, 488 U.S. 563, 569 (1989). Thus, Shannon has not shown deficient performance by counsel or prejudice based on counsel's failure to raise these meritless arguments, and grounds (3), (5), and (6) fail.

E. **Grounds (4) and (7): Counsel's Assistance at Sentencing**

Finally, Shannon contends that he received ineffective assistance of counsel during sentencing because counsel failed to contest the amount of loss attributable to him, as well as the amount of restitution, and also failed to challenge his sentencing enhancements for his leadership role and his unauthorized use of identification. [Doc. 181 at 8, 19, 21-23, 28-31, 33-34, 36-37]. The government responds that these

grounds lack merit. [Doc. 187 at 19-21]. Shannon replies, reasserting his claim that counsel should have challenged the two-level enhancement for his alleged unauthorized use of identification. [Doc. 188 at 9-12].

Shannon agreed in the plea agreement to a fourteen-level enhancement because the intended loss was between $550,000 and $1,500,000. [Doc. 99-1 at 6]. During the plea colloquy, the government restated this agreement regarding the loss calculation, and Shannon did not dispute the amount. [Doc. 186 at 23, 29-30]. However, counsel did contest the loss calculation during sentencing. [Doc. 185 at 4-13]. The Court overruled the objection and found that the fourteen-level enhancement was appropriate. [Id. at 19-21]. The fact that counsel was ultimately unsuccessful does not demonstrate ineffectiveness, particularly as Shannon expressly agreed to the fourteen-level enhancement. Chandler v. United States, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc). Additionally, Shannon cannot challenge restitution in this § 2255 motion. Mamone v. United States, 559 F.3d 1209, 1211 (11th Cir. 2009) (per curiam).

Counsel did challenge Shannon's role enhancement during sentencing, but the Court overruled the objection. [Doc. 185 at 3, 6, 11, 21-22]. Again, the fact that counsel ultimately was unsuccessful does not demonstrate ineffectiveness. Chandler,

17

218 F.3d at 1314. Finally, Shannon agreed in the plea agreement to a two-level enhancement "because the offense involved the unauthorized use of means of identification unlawfully to produce or obtain any other means of identification." [Doc. 99-1 at 6]. During the plea colloquy, the government restated this agreement, and Shannon did not dispute it. [Doc. 186 at 23, 29-30]. Thus, he cannot show deficient performance by counsel or prejudice for failing to challenge this enhancement that Shannon agreed in his plea agreement applied. In sum, Shannon has not shown deficient performance by counsel during sentencing or prejudice. Accordingly, he is not entitled to relief on grounds (4) and (7).

### III. CERTIFICATE OF APPEALABILITY

Rule 22(b)(1) of the Federal Rules of Appellate Procedure provides that an applicant for § 2255 relief "cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts provides, "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Section 2253(c)(2) of Title 28 states that a certificate of appealability ("COA") shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." A movant

satisfies this standard by showing "that reasonable jurists could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Based on the foregoing discussion of Shannon's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason, and the undersigned recommends that he be denied a COA.

### IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Shannon's § 2255 motion, [Doc. 181], and a COA be **DENIED**.

The Clerk is **DIRECTED** to terminate the referral of the § 2255 motion to the Magistrate Judge.

**SO RECOMMENDED**, this 18th day of MAY, 2018.

*Russell G. Vineyard*
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE